## Case No. 13,660.

SWAIM et al. v. The FRANKLIN.

[Crabbe. 210.] [1]

District Court, E. D. Pennsylvania. April 20, 1838.

SHIPPING—FAILURE TO DELIVER GOODS—BILL OF LADING—JURISDICTION.

A libel dismissed, pro forma, for want of jurisdiction, in order to allow an immediate appeal; the question being on the jurisdiction over a case of contract under the general maritime law.

[Cited in Knox v. The Ninetta, Case No. 7,-912.]

This was a libel for damages, for not delivering goods according to the provisions and terms of a bill of lading. It appeared that the bill of lading was dated at Philadelphia on the 28th December, 1836; that the goods therein mentioned were to be delivered to Champomier and Guard at New Orleans, they being the agents for the libellants [Charles G. Swaim and Isaac Damarest] and by them forwarded to one John S. Rhea, at Dayton, Ohio; that the goods were not delivered to Champomier and Guard at New Orleans, but to some other person; that they were not sent to Rhea for a long time, but were transported in various directions. and to various places by the person to whom they were erroneously delivered at New Orleans; and that, when they finally reached Rhea. they were damaged, and burthened with heavy charges for transportation. The libel was filed on the 14th March, 1838. and claimed damages on this state of facts. A plea to the jurisdiction was filed on the 16th of the same month.

On the 4th April. 1838, the case came on for a hearing before Judge HOPKINSON, on the question of jurisdiction, and was argued by Thompson & Gerhard. for the libellants. and Fallon & Shoemaker, for the respondent.

Mr. Thompson. for libellants.

This court has jurisdiction over contracts of a maritime nature, by proceedings in rem or in personam De Lovio v. Boit [Case No. 3,776]; Thackarey v. The Farmer [Id. 13,-852]; Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611. The ancient admiralty court of England has always taken jurisdiction according to the nature of the action, and not accord-

[1] [Reported by William H. Crabbe, Esq.]

ing to the place. Dunl. Adm. Prac. 7, 13, 16, 35. The restrictions on the admiralty jurisdiction in England arose from the contest between the courts of common law and admiralty; but the restraining statutes have never had any effect in this country, and ought not to affect the jurisdiction of this court. Stevens v. The Sandwich [Case No. 13,409], in note; Davis v. The Seneca [Id. 3,650]; Zane v. The President [Id. 18,201]; Davis v. The New Brig [Id. 3,643]; Thackarey v. The Farmer [Id. 13,852]. When the contract is strictly maritime, and within the ancient English admiralty jurisdiction, our courts will take jurisdiction of it, not restrained by the English common law decisions. Serg. Const. Law, 21, 207. Our courts have far exceeded the admiralty jurisdiction in England. 2 Brown, Civ. & Adm. Law, 122; Abo. Shipp. 143; North v. The Eagle [Case No. 10,309]; The Aurora, 1 Wheat. [14 U. S.] 96, 102, 105; The General Smith, 4 Wheat. [17 U. S.] 438; Phillips v. The Scattergood [Case No. 11,106]. A lien is given, on a foreign ship for repairs, by the general maritime law, but denied by the common law of England. The fact of such a lien being recognized in this country proves that we follow the general maritime law. The St. Jago De Cuba, 9 Wheat. [22 U. S.] 409, 416; Ramsay v. Allegre, 12 Wheat. [25 U. S.] 613, 616. All these liens, of which the admiralty takes jurisdiction, are on an implied liability incurred on land, and the service is performed on land, but the contracts relate to navigation and commerce. The Jerusalem [Case No. 7,294]; Feyroux v. Howard, 7 Pet. [32 U. S.] 324; The Draco [Case No. 4,057]; The Zodiac, 1 Hagg. Adm. 325; Johnson v. M'Donough [Case No. 7,395]; Hussey v. Christie, 9 East, 426; Smith v. Plummer, 1 Barn. & Ald 575, Bulgin v. The Rainbow [Case No. 2,116]; Brackett v. The Hercules [Id. 1,762]; Ross v. The Active [Id. 12,071]; The Favourite, 2 C. Rob. Adm. 237; The Grand Turk [Case No. 5,683]; Ouston v. Hebden, 1 Wils 101; Skrine v. The Hope [Case No. 12,927]; The Aurora, 3 C. Rob. Adm. 133; Janney v. Columbia Ins. Co., 10 Wheat. [23 U. S.] 411. Many cases can be found as to seizures under laws of the United States, yet these laws must be unconstitutional if the admiralty and maritime jurisdiction of our courts is confined to what it was in England when the constitution was adopted. U. S. v. La Vengeance, 3 Dall. [3 U. S.] 297; The Samuel, 1 Wheat. [14 U. S.] 9; The Octavia, Id. 20; The Sarah, 8 Wheat. [21 U. S.] 391. In regard to contracts of a maritime character our courts have jurisdiction. The Orleans v. Phœbus, 11 Pet. [36 U. S.] 183; The Mary [Case No. 9,187]. Jurisdiction is exercised over cases of charterparties and bills of lading. Drinkwater v. The Spartan [Id 4,085]. The only difference between a charter-party and a bill of lading is, that one is for the whole ship, and the other for particular articles. The Volunteer

[Id. 16,991]; 2 Kent, Comm. 220; The Rebecca [Case No. 11,619].

Mr. Fallon, for respondent.

We will not go into the general question of jurisdiction, but shall take up the case on its own particular facts. We mean to deny the jurisdiction over this particular case, but not over the general and broad ground. We will admit, for the present, that in general a bill of lading may be enforced in this court, but we say that this is not such a case as is embraced in this principle. Bains v. The James and Catherine [Case No. 756]. The libel charges, for the cause of action, that the goods were not delivered to the persons named in the bill of lading, but to other persons, and by reason whereof they were sent out of their destined course. The jurisdiction does not appear, and, as the court is one of limited jurisdiction. it must appear affirmatively on the libel that the case is within the limits. Bank of U. S. v. Weisiger, 2 Pet. [27 U. S.] 341. It does not appear that the damage was done at sea, or in a seaport, and there is, therefore no admiralty jurisdiction. The action is brought for the nondelivery of the goods to the proper person; not for any damage sustained by them at sea, or in port. or on board the vessel, but because the goods were sent out of their proper course The goods having arrived at New Orleans. this court has no jurisdiction because of their delivery to a wrong person after their arrival The libel admits the arrival, and charges, as the ground of the suit, that the goods were delivered to a wrong person. which. of course, could not have happened at sea, or in the harbor. The cases fully establish that a bill of lading is within the jurisdiction of the court; but to be within the jurisdiction, the contract must be maritime, and the breach must happen, or the cause of action arise at sea. De Lovio v. Boit [Case No. 3,776]. If the libel shows that the goods arrived safely at New Orleans, there is an end of the jurisdiction. A bill of lading contains two contracts, one to transport the goods, the other to deliver them. For the breach of the first the admiralty has jurisdiction, but not for the second, which is not to be performed at sea. The Volunteer [supra]. The lien for freight is sustained because the service was, from its inception to its termination, on the sea. Drinkwater v. The Spartan [supra]. The same principle decides Crane v. The Rebecca [supra]; Bulgin v. The Rainbow [Case No. 2,116]; Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611, 634; and Phillips v. The Thomas Scattergood [Case No. 11,106]. The damages claimed here are extraordinarily remote; they are for the consequential expense and loss alleged to have been sustained by sending the goods to a wrong place, out of their destined course. That is, the goods were delivered to a wrong person; that person sent them to a wrong place, and that occasioned the loss

and expense, which is the damage claimed. Even if the owners should be responsible, this gives no lien on the vessel. Whoever claims a lien must establish it. The General Smith, 4 Wheat. [17 U. S.] 443.

Mr. Shoemaker, for respondent.

Admiralty judges and courts, in this country, are governed only by the constitution and acts of congress. It was intended to give to the admiralty jurisdiction in such cases, only, as were not properly cognizable at common law. Talbot v. The Three Brigs, 1 Dall. [1 U. S.] 95; Articles of Confederation, arts. 2, 9. The words "cases of admiralty and maritime jurisdiction," in article 3, § 2, cl. 1, of the constitution, were intended to refer to the jurisdiction, as given by the articles of confederation. The trial by jury has always been a favorite with the states. See the 7th amendment to the constitution. All this matter, however, is to be decided by the statute under the constitution. The act of 24th September, 1789, § 9 (1 Story's Laws, 56 [1 Stat. 76]), uses the words, "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." "Suitors" includes defendants as well as plaintiffs. Whatever jurisdiction this court might have had before this statute, it is now taken away wherever the common law can afford a remedy. Fisher v. Blight, 2 Cranch [6 U. S.] 386.

Mr. Gerhard, for libellants, in reply.

It has been frequently decided by this court, that its jurisdiction extends to all maritime contracts. Davis v. The New Brig [Case No. 3,643]; De Lovio v. Boit [supra]; Drinkwater v. The Spartan [supra]; The Rebecca [Case No. 11,619]; The Draco [Id. 4,057]. This jurisdiction extends over the whole contract, and is not limited to the place where the breach takes place. The contract is not performed by the mere transporting the goods over the sea. This must be followed up by the delivery of them to the person designated. It is this which is the consummation of the contract. The objections which have been made to the jurisdiction, from the origin and statutory limitations of the admiralty courts in this country, are answered by Dunl. Adm. Prac. 38. The case, Bains v The James and Catherine [Case No 756] is inconsistent with the whole current of decisions. Thackarey v. The Farmer [supra]: Peyroux v. Howard, 7 Pet. [32 U. S.] 324; Davis v The New Brig [supra]; The Orleans v. Phœbus, 11 Pet. [36 U. S.] 184; 3 Story, Const. p. 640, § 1663 et seq.; Id. p. 536, § 1668 et seq.; 1 Boul. P. Dr. Com. 149, 150; 2 Boul P. Dr. Com. 308; 3 Pard. Dr. Com. 163, 186; The Nestor [Case No. 10,126]; Certain Logs of Mahogany [Id. 2,559]; Janney v. Columbia Ins. Co., 10 Wheat. [23 U. S.] 418; 2 Brown, Civ. & Adm. Law, 122.

HOPKINSON, District Judge, said that the case had been elaborately argued; that it would impose a great labor upon him, and require much time to give a full examination to all the authorities and arguments that had been insisted upon, which was hardly possible to be done during the session of the circuit court; that even when done it would decide nothing, but be only preliminary to carrying the case to the circuit court. In this view of the case, he had determined to give a judgment pro forma; that it would be in favor of the plea to the jurisdiction, because that would be a final judgment, and allow an immediate appeal, whereas a judgment for the jurisdiction would be followed by a further hearing on the merits.

Libel dismissed pro forma, for want of jurisdiction. No appeal was taken.